**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NATHANIEL WILLIAMS, | Case No. 3:19-cv-00176-MMD-CLB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| DARREN SPIECE, *et al.,* | |
| Defendants. | |

Plaintiff has filed a motion for leave to file a fourth amended complaint ("FAC") (ECF No. 29), together with a proposed FAC (ECF No. 29-1), and a motion for leave to file a longer than standard FAC. (ECF No. 30.)  The court recommends that both motions be granted (ECF Nos. 29, 30) and that the FAC (ECF No. 29-1) be dismissed, with prejudice, as to all claims except Count V, as further discussed below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff commenced this action on March 28, 2019, by filing an application to proceed *in forma pauperis* along with a proposed civil rights complaint. (ECF Nos. 1, 1-1.)  Before the District Court had an opportunity to screen the original complaint pursuant to 28 U.S.C. § 1915A, Plaintiff filed a first amended complaint. (ECF No. 8.)  On January 30, 2020, the District Court screened Plaintiff's first amended complaint and allowed some of Plaintiff's claims to proceed but dismissed other claims and stayed this action to allow the parties to engage in mediation discussions.  (ECF No. 9.)  On February 3, 2020, Plaintiff filed a motion for leave to file a motion for reconsideration, together with a motion for reconsideration regarding the claims that the Court dismissed. (ECF Nos. 10, 10-1.)  On April 13, 2020, Plaintiff filed a second motion for leave to file the previous

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1 motion for reconsideration.  (ECF No. 12.)  Plaintiff later filed a motion for leave to file a

2 second amended complaint ("SAC"), together with an SAC (ECF Nos. 13, 13-1), as well

3 as two motions for leave to file a longer than standard SAC.  (ECF Nos. 14, 15.)  Plaintiff

4 then filed a motion for leave to file a third amended complaint ("TAC") (ECF No. 21),

5 together with a TAC (ECF No. 21-1) and a motion for leave to file a longer than standard

6 TAC (ECF No. 22), which the District Court again screened.   (ECF No. 27.)

7 The TAC alleged the following claims: (1) Count I, equal protection; (2) Count II,

8 retaliation; (3) Count III, deliberate indifference to serious medical needs; (4) Count IV,

9 due process; and (5) Counts V and VI, state law torts.  (ECF No. 28.)  The Court allowed

10 Plaintiff to proceed only on his Count III, deliberate indifference to serious medical needs

11 claim against Defendants Spiece, Dreesen, Oliver, Carillo, Lewis, Gang, and Howell and

12 the remainder of Plaintiff's claims were dismissed, without prejudice.  (ECF No. 27.)

13 Before Defendants filed an answer to the TAC, Plaintiff filed his proposed FAC

14 (ECF No. 29-1), which the court now screens pursuant to 28 U.S.C. § 1915A.

15 **II.    SCREENING STANDARD**

16 Federal courts must conduct a preliminary screening in any case in which an

17 incarcerated person seeks redress from a governmental entity or officer or employee of

18 a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify

19 any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a

20 claim upon which relief may be granted, or seek monetary relief from a defendant who is

21 immune from such relief. *See id.* §§ 1915A(b)(1), (2). Pro se pleadings, however, must

22 be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

23 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

24 elements: (1) the violation of a right secured by the Constitution or laws of the United

25 States, and (2) that the alleged violation was committed by a person acting under color

26 of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

27 In addition to the screening requirements under § 1915A, pursuant to the Prison

28 Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's

1    claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails

2    to state a claim on which relief may be granted, or seeks monetary relief against a

3    defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a

4    complaint for failure to state a claim upon which relief can be granted is provided for in

5    Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under

6    § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a

7    court dismisses a complaint under § 1915(e), the plaintiff should be given leave to

8    amend the complaint with directions as to curing its deficiencies, unless it is clear from

9    the face of the complaint that the deficiencies could not be cured by amendment. *See*

10   *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

11       Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See*

12   *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to

13   state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in

14   support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175

15   F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all

16   allegations of material fact stated in the complaint, and the court construes them in the

17   light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th

18   Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than

19   formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While

20   the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

21   must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*,

22   550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is

23   insufficient. *See id.*

24       Additionally, a reviewing court should "begin by identifying pleadings [allegations]

25   that, because they are no more than mere conclusions, are not entitled to the

26   assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal

27   conclusions can provide the framework of a complaint, they must be supported with

28   factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should

1   assume their veracity and then determine whether they plausibly give rise to an

2   entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for

3   relief . . . [is] a context-specific task that requires the reviewing court to draw on its

4   judicial experience and common sense." *Id.*

5   　　　Finally, all or part of a complaint filed by an incarcerated person may be

6   dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in

7   fact. This includes claims based on legal conclusions that are untenable (e.g., claims

8   against defendants who are immune from suit or claims of infringement of a legal interest

9   which clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,

10   fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);

11   *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

12   **III.　　SCREENING OF FOURTH AMENDED COMPLAINT**

13   　　　In the FAC, Plaintiff sues multiple defendants for events that took place while

14   Plaintiff was in the custody of the Nevada Department of Corrections ("NDOC"). (ECF

15   No. 29-1 at 1.)  Plaintiff sues Defendants Darren Spiece, F. Hammel, Frank Dreesen,

16   Hernandez, Hollingsworth, Ivan Dubon, Jenny Byrnes, Jerry Howell, Jo Gentry, Joseph

17   Lewis, Philip Gang, Ronald Oliver, Ericka Samano-De La Torre, Sanchez, Sandoval,

18   Sonya Carrillo, William Reubart, Pam Del Porto, and Lanita Anderson.  (*Id.* at 1-8.)

19   Plaintiff alleges six counts and seeks declaratory and monetary relief.  (*Id.* at 21-52.)

20   　　　The FAC alleges the following: On August 27, 2017, Plaintiff was charged a

21   "Major Infraction" by C.O. Dubon for a diluted urine sample.  (*Id.* at 8.)  Plaintiff had a

22   disciplinary hearing regarding the charge on June 12, 2017.  (*Id.*)  Plaintiff put up a

23   defense and was found not guilty of the charge.  (*Id.* at 8-9.)  Following the dismissal of

24   the major infraction, Dubon threatened to "get" Plaintiff "sooner or later."  (*Id.* at 9.)

25   Plaintiff alleges that Dubon's "retaliatory attitude" was in relation to Plaintiff's exercise of

26   his "free speech" to present a defense at his disciplinary hearing.  (*Id.*)  Plaintiff asserts

27   that in the following months he was subjected to various harassing comments and

28   remarks by Dubon.  (*Id.*)

1    Next, Plaintiff alleges that on November 24, 2017, Plaintiff had a "mandown" for

2    untreated medical and dental issues, which are the subject of a separate lawsuit—3:18-

3    cv-00282-MMD-CLB. (*Id.*) Dubon was not present at this "mandown" and Plaintiff was

4    not given a urinalysis ("UA") for drugs. (*Id.*) On December 15, 2017, Plaintiff had

5    another "mandown" for the same untreated medical issues. (*Id.*) Plaintiff alleges that

6    during the course of the medical emergency, Dubon "went out of his way" "to confront"

7    Plaintiff in the infirmary. (*Id.*) Dubon interfered with the medical emergency to obtain a

8    UA, which Plaintiff alleges was due to Plaintiff's "protected conducted of using [his] due

9    process [and] free speech rights that resulted in the dismissal of [Dubon's] previous

10   charge." (*Id.* at 9-10.) During the medical emergency, Plaintiff had a seizure and hit his

11   head on concrete. (*Id.* at 10.) Dubon made comments to other guards about Plaintiff

12   being an "addict" while on his way to the Valley Hospital. (*Id.*) At Valley Hospital,

13   Plaintiff was given a full evaluation, including lab work, and a nurse relayed that the

14   incident was "not drug related." (*Id.*) Upon returning to the facility, Plaintiff filled out a

15   Release of Information to obtain all documents from Valley Hospital, and such records

16   are now in Plaintiff's medical file. (*Id.* at 10-11.)

17       Plaintiff alleges in early January 2018 he was punished by being put in a

18   "behavior modification unit," ("BMU")—without a hearing—where he was stripped of his

19   level, programs, and appliances, and immediately began losing good time credits,

20   affecting the length of his sentence. (*Id.* at 11.) On January 12, 2018, Plaintiff claims he

21   was drugged and transferred unconsciously to a strip cell at the High Desert State Prison

22   ("HDSP") in retaliation for filing a grievance.[2] (*Id.*) On January 16, 2018, Plaintiff was

23   told he was being charged for a "dirty UA" from December 15, 2017, which is why he

24   was placed in the BMU at the Southern Desert Correctional Center ("SDCC"). (*Id.*)

25   Plaintiff was not allowed to see or sign the Notice of Charges ("NOC"). (*Id.* at 12.)

26   Plaintiff pled not guilty and requested various inmate witnesses who were present at the

27   _____

28   [2]    Plaintiff states these allegations are the subject of a separate lawsuit—3:18-cv-00282-MMD-CLB and are included for "clarity only, not as a claim in this case."

1    December 15, 2017 "mandown" as well as evidence including blood test results from

2    Valley Hospital.  (*Id.*)   When Plaintiff received the NOC, they were incomplete and

3    incorrect. (*Id.*)

4         During this time, Plaintiff was in pain from injuries, as well as medical and dental

5    issues (subject of lawsuit 3:18-cv-00282-MMD-CLB), and tried to obtain pain relief,

6    vitamins, allergy pills, Orajel, muscle rub, and antacids from the canteen, but was told

7    the items were unavailable.  (*Id.* at 12-13.)

8         On February 7, 2018, Hollingsworth conducted a PREA/transfer assessment

9    follow-up and Plaintiff complained about Carrillo, Dubon, PREA issues, and the

10   December 15th "mandown" and UA.  (*Id.* at 13.)  In February or early March 2018, Dubon

11   made various remarks to Plaintiff about writing kites and grievances and threatened

12   Plaintiff by saying "keep messing with fire [and] your (sic) gonna (sic) keep getting

13   burned."  (*Id.*)  Plaintiff alleges Dubon also threatened that he had "the 'Juice'" to send

14   Plaintiff to HDSP, Arizona, or Ely State Prison.  (*Id.*)

15        On February 15, 2018, Plaintiff alleges he had a "mock disciplinary hearing" with

16   Spiece, Hernandez, and Hollingsworth.  (*Id.*)   The charging officer changed from

17   Sanchez to Samano-De La Torre without "any notice or justification." (*Id.* at 14.)  Plaintiff

18   alleges Spiece, Hernandez, and Hollingsworth turned a "blind eye to the fact that

19   medical was not contacted prior to a 'NOC'," and that the UA was taken "in a harassing

20   manner in the course of a medical emergency by Dubon." (*Id.*)  Spiece, Hernandez, and

21   Hollingsworth denied Plaintiff his witnesses, including the two correctional officers that

22   could verify Plaintiff's negative blood test.  (*Id.*)   Plaintiff alleges they also denied

23   Plaintiff's requested evidence.  (*Id.*)  Further, Plaintiff alleges that instead of summoning

24   Carrillo to the hearing, Spiece, Hernandez, and Hollingsworth "kicked [Plaintiff] out of the

25   room" and called Carrillo, where she made a statement against Plaintiff that was not put

26   in his record.  (*Id.*)  Plaintiff claims that there were numerous complaints on filed by him

27   against Carrillo.  (*Id.* at 14-15.)  Plaintiff claims the audio tape of the disciplinary hearing

28   was stopped when he was "kicked [] out of the room," and there was a "meeting of the

1    minds" between Spiece, Hernandez, Carrillo,  and Hollingsworth.  (*Id.* at 15.)  Plaintiff

2    claims Carrillo lied about there being no blood test taken at Valley Hospital.  (*Id.*)

3         Plaintiff asserts he was found guilty based on "UA test results that a blood test will

4    prove false", based on an officer report from a different charging officer, and based on

5    Carrillo's statement, which was made against Plaintiff in retaliation for his protected

6    conduct of filing meritorious complaints against her.  (*Id.* at 15-16.)  As a direct result of

7    the disciplinary charge, Plaintiff lost approximately 50 days of good time/work time from

8    January 2018 through May 2018.  (*Id.* at 17.)

9         Plaintiff's PREA case manager eventually submitted him for a transfer to another

10   medium security prison. (*Id.* at 18-20.) Instead of transferring Plaintiff to another medium

11   security prison, John Does 1-6 transferred Plaintiff to a maximum-security prison in

12   violation of prison policies. (*Id.*) Based on these allegations, Plaintiff brings six counts.

13   The court will address each of these counts in turn.

14        **A.    Count I – Fourteenth Amendment Due Process**

15        In Count I, Plaintiff alleges that he was not provided due process for his

16   disciplinary hearing.  (ECF No. 29-1 at 22.) To state a cause of action for deprivation of

17   procedural due process, a plaintiff must first establish the existence of a liberty interest

18   for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995).

19        The court finds that Plaintiff fails to establish the existence of a liberty interest.

20   Plaintiff asserts that NRS 209.4465 creates a liberty interest in good time credits, which

21   he alleges he "lost" 50 days-worth of credits as a result of the disciplinary action.  (ECF

22   No. 29-1 at 22.)  While "States may under certain circumstances create liberty interests

23   which are protected by the Due Process Clause," "such interests will be generally limited

24   to freedom from restraint" that impose atypical and significant hardship on the inmate.

25   *Sandin*, 515 U.S. at 487. Simply alleging that a defendant violated state law is not

26   sufficient to state a claim for violation of the Fourteenth Amendment's Due Process

27   clause. *Swarthout*, 562 U.S. at 222 (holding that "a 'mere error of state law' is not a

28   denial of due process"); *see also Young v. Williams*, Case No. 2:11-CV-01532-KJD,

1  2012 WL 1984968, at *3 (D. Nev. June 4, 2012) (holding that alleged error in applying

2  good time credits to sentence was an error of state law that did not constitute a due

3  process violation). Additionally, Nevada state prisoners do not have a liberty interest in

4  the discretionary grant of parole or in eligibility for such parole. *See Moor v. Palmer*, 603

5  F.3d 658, 661-62 (9th Cir. 2010); *Fernandez v. Nevada*, No. 3:06-CV-00628-LRH-RAM,

6  2009 WL 700662, at *10 (D. Nev. Mar. 13, 2009).

7  However, in some circumstances, state statutory requirements mandating the

8  treatment of good time credits in particular ways will necessarily impact the duration of

9  the prisoner's confinement.  An inmate has no due process liberty interest in "good time

10  credits" unless a state law creates such an interest. *See Greenholtz v. Inmates of the*

11  *Nebraska Penal and Correctional Complex*, 442 U.S. 1, 8–11 (1979). In *Sandin*, the

12  Supreme Court characterized the issue regarding the treatment of good time credits as a

13  liberty interest in a "shortened prison sentence" which resulted from a statutory

14  requirement that good time credits were revocable only if the prisoner was guilty of

15  serious misconduct. *Sandin*, 515 U.S. at 477 (quoting *Wolff*, 418 U.S. at 557). The

16  Supreme Court then went on to hold that, even when a state statute uses mandatory

17  language creating rights under state law, a state can create a liberty interest that invokes

18  procedural protections under the Due Process Clause only if the state's

19  action "will *inevitably* affect the duration of his sentence" or if there are prison conditions

20  that impose "atypical and significant hardship on the inmate in relation to the ordinary

21  incidents of prison life." *Sandin*, 515 U.S. at 484, 487 (emphasis added).

22  Here, the question is whether the alleged removal of credits inevitably affects the

23  duration of Plaintiff's sentences. It does not. This is not a situation where the application

24  of credits would necessarily affect the expiration date of Plaintiff's sentences. Even if

25  Plaintiff were to have good time credits applied to his parole eligibility dates, the

26  maximum terms for his sentences would not change. Plaintiff's claims affect only his

27  parole *eligibility* dates.  Nevada's parole scheme intentionally and explicitly makes parole

28  discretionary; an offender therefore is not required to be released once he serves the

1    minimum term and is only considered for parole at that time. *See Moor*, 603 F.3d at 661-

2    62. Thus, an earlier parole eligibility date does not inevitably affect the duration of a

3    prisoner's sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (holding that

4    speeding up *consideration* for parole does not necessarily imply the invalidity of the

5    duration of the prisoner's sentence); *Klein v. Coblentz*, 1997 WL 7675384, *4 (10th Cir.

6    1995) (relying on *Sandin* to hold that, where good time credits applied under state law

7    only to determining the prisoner's parole eligibility date and not to a sentence reduction,

8    the loss of credits did not inevitably increase the duration of the sentence and there was

9    no liberty interest giving rise to due process protections). Therefore, Plaintiff does not

10   adequately allege a liberty interest and does not and cannot state a procedural due

11   process claim or a substantive due process claim. Accordingly, the court recommends

12   that the due process claim be dismissed with prejudice, as further amendment would be

13   futile. *See Cato*, 70 F.3d at 1106.

14   **B.    Counts II, III, and IV – First Amendment Retaliation**

15   Prisoners have a First Amendment right to file prison grievances and to pursue

16   civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

17   "Without those bedrock constitutional guarantees, inmates would be left with no viable

18   mechanism to remedy prison injustices. And because purely retaliatory actions taken

19   against a prisoner for having exercised those rights necessarily undermine those

20   protections, such actions violate the Constitution quite apart from any underlying

21   misconduct they are designed to shield." *Id.*

22   To state a viable First Amendment retaliation claim in the prison context, a plaintiff

23   must allege: "(1) [a]n assertion that a state actor took some adverse action against an

24   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

25   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

26   reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not

27   required; it is enough if an official's acts would chill or silence a person of ordinary

28   firmness from future First Amendment activities. *Id.* at 568-69.

1       The court finds that Plaintiff fails to state colorable First Amendment claims in

2   Counts II, III, or IV.  In Count II, Plaintiff asserts that after lodging his own defense and

3   being found "not guilty" for a major rule violation, Dubon became hostile towards Plaintiff,

4   "threatening retaliation."  (ECF No. 29-1 at 26.)  Dubon was also allegedly "aggressive

5   [and] intimidating, making vindictive comments." (*Id.* at 27.)  Additionally, Plaintiff claims

6   that Dubon performed a UA during a "mandown" because of Plaintiff's "protected

7   conduct." (*Id.* at 28.)   According to the FAC, Dubon's vindictive behavior was the result

8   of Plaintiff being found not guilty of disciplinary charges related to a diluted urine sample,

9   not any protected conduct on Plaintiff's part.  Additionally, verbal harassment or abuse is

10  insufficient to state a constitutional deprivation under 42 U.S.C. § 1983.  *Oltarzewski v.*

11  *Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).  Further, Plaintiff's vague and conclusory

12  allegations that Dubon acted in a retaliatory manner in requiring a urine sample during

13  Plaintiff's medical event on December 15, 2017, are insufficient to state a claim for

14  retaliation.

15       In Count III,[3] Plaintiff alleges Carrillo made certain statements and withheld

16  evidence during the disciplinary hearing because of Plaintiff's protected conduct.  (ECF

17  No. 29-1 at 31-34.)  Plaintiff seems to assert that he was found guilty of a "dirty UA"

18  based solely on statements from Carrillo and those statements were made in retaliation

19  for Plaintiff filing grievances and complaints against her.  However, Plaintiff contradicts

20  the facts asserted in his own FAC, which state he was found guilty of the major infraction

21  based on urine sample test results, the report of a charging officer, and based on

22  Carrillo's statement.  (*See id.* at 15-16.)  Not only are Plaintiff's allegations vague and

23  conclusory, but the allegations also seem to contradict other allegations in his complaint

24  and are thus insufficient to state a claim for retaliation.

25       In Count IV, Plaintiff alleges that he was transferred to Ely State Prison ("ESP") in

26  retaliation for protected conduct, and "proof of the transfer being in retaliation is in the

27

28  [3]      In Count III, Plaintiff asserts additional allegations related to his disciplinary hearing, which are addressed *supra*, in section A.

1  fact that the transfer would not have occurred without the protected conduct." (*Id.* at 40.)

2  These vague and conclusory allegations are insufficient to state a colorable retaliation

3  claim. Additionally, "an inmate has no justifiable expectation that he will be incarcerated

4  in any particular prison within a State." *See Olim v. Wakinekona*, 461 U.S. 238, 245

5  (1983).

6  Accordingly, based on all of the above, the court recommends Plaintiff's claims of

7  First Amendment retaliation be dismissed, with prejudice, as further amendment would

8  be futile. *See Cato*, 70 F.3d at 1106.

9  **C.    Count V – Eighth Amendment Cruel and Unusual Punishment**

10  In Count V, Plaintiff asserts he had a series of ongoing medical issues that

11  caused him significant pain. Plaintiff was treating his pain with medication purchased

12  from the prisoner store. Plaintiff's access to the prison store was restricted because of

13  the charges related to his urine sample.  Plaintiff points the court to another lawsuit

14  Plaintiff has filed, 3:18-cv-00282-MMD-CLB, in which he asserts claims related to the

15  underlying medical conditions for which he sought pain medication discussed in the

16  present lawsuit.

17  While the Court previously allowed Plaintiff to proceed on deliberate indifference

18  to serious medical needs claims based on the allegations laid out in Count V (previously

19  labeled as Count III in the TAC (*see* ECF No. 28)), it is not apparent to the court why

20  Plaintiff is pursuing claims that appear to allegedly arise from the same nucleus of

21  operative facts and transactions or series of transactions in multiple actions.

22  The court is authorized to control its docket and can take steps in the interests of

23  judicial economy to limit efforts by the same plaintiff from filing multiple suits based upon

24  the same alleged underlying conduct by the same defendants when one suit will do.

25  *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688, 692-93 (9th Cir.

26  2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008); *see*

27  *also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

28  (1976) (noting that between federal district courts, "the general principle is to avoid

1    duplicative litigation").  A plaintiff is "not at liberty to split up his demand, and prosecute it

2    by piecemeal, or present only a portion of the grounds upon which special relief is

3    sought, and leave the rest to be presented in a second suit, if the first fail[s]."  *Cook v.*

4    *C.R. England, Inc.*, 2012 WL 2373258, at *3 (C.D. Cal. June 21, 2012) (quoting *United*

5    *States v. The Haytian Republic*, 154 U.S. 118, 125 (1894)).

6            "[I]n assessing whether the second action is duplicative of the first," a court must

7    "examine whether the causes of action and relief sought, as well as the parties or privies

8    to the action, are the same."  *Adams*, 487 F.3d at 689 (citing *The Haytian Republic*, 154

9    U.S. at 124). Where, as here, a district court has "duplicative suits contemporaneously

10   pending on its docket," the court has discretion to dismiss a duplicative later-filed action,

11   to stay that action pending resolution of the previously filed action, to enjoin the parties

12   from proceeding with it, or to consolidate both actions, depending on the circumstances

13   of the case.  *Id.* at 692; *see also* Fed. R. Civ. Proc. 42(a) (permitting the court to

14   consolidate actions that are "before the court" and "involve a common question of law or

15   fact"). "Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the

16   enjoinment of proceedings, promotes judicial economy and the 'comprehensive

17   disposition of litigation.'"  *Adams*, 487 F.3d at 692 (quoting *Kerotest Mfg. Co. v. C-O-Two*

18   *Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

19          "Whether two events are part of the same transaction or series depends on

20   whether they are related to the same set of facts and whether they could conveniently be

21   tried together."  *Adams*, 487 F.3d at 689 (citation omitted). Here, both the prior filed

22   lawsuit, 3:18-cv-00282-MMD-CLB and the present lawsuit, 3:19-cv-00176-MMD-CLB

23   arise out of a common set of operative facts.  The actions also largely assert the same

24   alleged violations of rights and will involve substantially the same evidence in addition to

25   asserting such claims against similar defendants. Thus, the two suits arise out of the

26   "same set of facts" and could "conveniently be tried together." *See Adams*, 487 F.3d at

27   689 (citation omitted).   It appears the equities favor limiting Plaintiff from pursuing

28   multiple suits based on the same underlying conduct and therefore the court

1  recommends that the deliberate indifference to serious medical needs claim in this

2  lawsuit be dismissed and consolidated with his deliberate indifference to serious medical

3  needs claim in case 3:18-cv-00282-MMD-CLB.

4         **D.     Count VI – Fourteenth Amendment Equal Protection**

5         In Count VI, Plaintiff brings an equal protection claim based on a "class of one"

6  theory. (ECF No. 29-1 at 45-47.)  In the Court's prior screening order, Plaintiff's equal

7  protection claim was dismissed without prejudice.  (*See* ECF No. 27 at 8.)  The Court

8  found that Plaintiff failed to state a colorable equal protection claim because he generally

9  alleged that every Defendant treated him differently than the Defendant would have

10  treated other inmates and singled him out for poor treatment. But that Plaintiff did not

11  actually allege that there were any inmates in his similar situation who were treated

12  differently than he was. Thus, the allegation that prison officials violated prison

13  regulations, on its own, was insufficient to support an equal protection claim. The Court

14  directed Plaintiff to allege specific facts demonstrating that he was treated different than

15  other similarly situated individuals.

16         In reviewing Plaintiff's FAC, the court finds that Plaintiff still fails to state a

17  colorable equal protection claim.  Plaintiff's complaint is vague and conclusory and does

18  not provide specific facts, as directed, which demonstrate that he was treated differently

19  than other similarly situated individuals.  Accordingly, the court recommends that

20  Plaintiff's equal protection claim be dismissed, with prejudice, as further amendment

21  would be futile.  *See Cato*, 70 F.3d 1106.

22  **IV.    CONCLUSION**

23         Based upon the foregoing, the court recommends that Plaintiff's motion for leave

24  to file a fourth amended complaint (ECF No. 29) and motion to file a longer than

25  standard complaint (ECF No. 30) be granted.  The court also recommends that the

26  fourth amended complaint (ECF No. 29-1) be dismissed, with prejudice, as to all claims

27  except for Plaintiff's Count V deliberate indifference to serious medical needs claim,

28  which should be dismissed, without prejudice, and be consolidated with his claims in

1   case number 3:18-cv-00282-MMD-CLB.

2        The parties are advised:

3        1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

4   Practice, the parties may file specific written objections to this Report and

5   Recommendation within fourteen days of receipt.  These objections should be entitled

6   "Objections to Magistrate Judge's Report and Recommendation" and should be

7   accompanied by points and authorities for consideration by the District Court.

8        2.     This Report and Recommendation is not an appealable order and any

9   notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

10   District Court's judgment.

11   **V.    RECOMMENDATION**

12        **IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for leave to file the

13   FAC and motion for longer than standard FAC (ECF Nos. 29, 30) be **GRANTED**;

14        **IT IS FURTHER RECOMMENDED** that the FAC (ECF No. 29-1) be **DISMISSED,**

15   **WITH PREJUDICE**, as to Counts I, II, III, IV, and VI;

16        **IT IS FURTHER RECOMMENDED** that Count V be **DISMISSED, WITHOUT**

17   **PREJUDICE**, so that Plaintiff may consolidate the claim with the deliberate indifference

18   to medical needs claim in Case No. 3:18-cv-00282-MMD-CLB; and

19        **IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER**

20   **JUDGMENT** and **CLOSE** this case.

21   **DATED**:  February 25, 2021

22    

23                    **UNITED STATES MAGISTRATE JUDGE**

24

25

26

27

28